# ANTONMATTEI & NEGRONI, S. EN C., Bankrupts.

---

Ponce, Bankruptcy, No. 32.

ON APPEAL FROM ALLOWANCE OF FEES TO BANKRUPT'S ATTORNEY.

Attorney—Names of Clients.

1. An attorney does not appear in person, but on behalf of his clients, whose names should be set out.

Bankruptcy—Referee.

2. In bankruptcy matters the referee is the court for almost all purposes, and his action will be sustained by the judge unless it is clear the referee is wrong.

Referee—Court.

3. The court cannot take into account anything that happens before the referee, except what the referee certifies, except what the parties agree has been done, and in certain cases what may appear by certiorari.

(October 15, 1914.)

Bankruptcy—Attorneys' Fees.

4. Where the referee has allowed the attorney of the bankrupt $300, it is improper, in the absence of a satisfactory showing as to special difficulties, to increase the amount $200 more, where the whole estate realized the sum of $3,000.

Opinions filed October 13, 15, 1914.

In the Matter of Antonmattei & Negroni, S, en C.

*Mr. Frank Antonsanti* for bankrupt's attorney.

*Mr. Harry F. Besosa* for creditors.

HAMILTON, Judge, delivered the following opinion:

1. In the first place, the papers are spoken of as being a personal matter of Mr. Besosa. The petition is in his name with reference, however, to the fact that he appears in some representative capacity. It is not the proper practice for an attorney to bring matters up in his own name. The attorney has no interest in it whatever except to represent his clients, and if his clients have not interest enough or for any reason do not wish their names used, it might very well be that the referee could refuse to certify the matter up. It would be the better practice for the referee in every case to require the papers to be filed by the attorney as representing certain parties. The practice in this particular appeal is disapproved, but I will consider the case because that is a matter primarily for the referee. The referee himself has waived the point by certifying the papers up, so that it probably comes up in a proper jurisdictional manner. I would suggest, however, in fact, I would request, that in the future the referees only certify matters where the papers are presented strictly in the names of the parties themselves. I will not lay any stress on that point in this case, but in the future I might.

2. There are two principles which would have to govern the court in a case of this sort. The first is that in bankruptcy matters the referee is the court for almost all purposes. What the referee does the court will sustain, unless clearly convinced

In the Matter of Antonmattei & Negroni, S. en C.

that the referee is wrong. The bias, if you might call it such, of the court, would be to sustain the referee. I think that should be the practice. Otherwise the court might be burdened with rehearings of small matters. So that will be the way in which the court will approach this case and every other case. On the other hand, of course, the referee may be wrong, and he, as well as the judge, is compelled to look to the law, which says that expenses of all kinds in bankruptcy matters shall be kept within due limits; that economy rather than otherwise shall be the basis upon which the court shall act. There is a large element of discretion in this, of course. Each case would stand to a large extent upon its own facts. For that reason it will be necessary to take this particular case and study it in order to say on which side the balance will incline.

3. There is this further proposition. The matter at present is before the judge as a court on appeal. The court cannot take into account anything that happened below before the referee except in two or three cases. In the first place, primarily, where the referee certifies up that so and so is the evidence. In fact that is the proper way to bring anything up. The second would be if the parties agree that so and so is the evidence, whether certified by the referee or not; of course the court would take cognizance of that. But where the attorneys get up and say so and so happened, the court could not act in that case, because you can see that there would be no end to a trial on an appeal unsupported in that way. In studying this case I shall have to go by the record as certified by the referee. There has been no intimation that that is not correct or that it does not contain the evidence. Of course, if that was done, then very likely I would have to go further into the case by certio-

In the Matter of Antonmattei & Negroni, S. en C.

rari or some other way to get at the ends of justice. But so far as this case is concerned right now, the court will take it on the papers which have been certified up. So that what I have said will be the opinion of the court in this case, and there will be only one more paragraph to be added, and that is what the effect of all this is. The case is taken under submission.

HAMILTON, Judge, delivered the following opinion October 15, 1914.

4. When the case was argued I made a few remarks as to the general principles of fees, but reserved until now to apply those principles to this case. The situation seems to be that the attorney for the bankrupt attended the first meeting of creditors and that that meeting was adjourned from day to day, a great deal being done, and the attorney was thereby prevented from accepting other lucrative employment. That seems to be the main point. There is no evidence that any suits were brought or that anything was done outside of the general conduct of the meeting of creditors. On the strength of that, some $3,000 having been realized, and $300 having been already allowed the attorney for the bankrupt, the attorney asked for a further allowance and the referee allowed $200 additional, making $500.

This is brought up by a bill of review. The matter of fees is always a delicate, and sometimes is a difficult, question. But the theory of the bankruptcy act is that all charges shall be as low as practicable, that the bankruptcy proceeding shall be as inexpensive as possible, and it seems to the court, as stated in a previous opinion, that there should be some general prin-

In the Matter of Antonmattei & Negroni, S. en C.

ciple adopted as to fees. In some jurisdictions where a fund is brought into court in chancery, 5 per cent is the standard. It may be more or it may be less, but in equity cases 5 per cent would be a standard, and that has been adopted by this court in several instances. There would seem to be no reason why it should be larger in bankruptcy than in equity. In point of fact, the expenses in bankruptcy are supposed to be less than in equity.

Keeping that in mind as a standard, it would look as if in this case the attorney for the bankrupt, in receiving $300 when the property realized $3,000, and there being no satisfactory showing as to great difficulties in the case, had already received at least as much as should be allowed. So that the action of the referee in adding $200 more would not seem to be called for by the facts of the case.

On these grounds the petition for review is granted, and it is ordered that the original allowance by the referee of $300 shall be the allowance made in the case up to the present. That will require the attorney to refund $200. The court regrets that, but we have to be governed by general principles in law cases; so that will be the order of the court. The allowance up to the present is $300. I say nothing as to what may happen in the future. I do not know whether anything may come up to make it proper to increase this in the future.